Good morning. I should advise you of one thing, which I don't know if you're aware of or not, but the Marvel Film Company is filming an Avengers movie right next to us, and it's not anything we had anything to do with or authorizing in any way, but there is a possibility that there could be exploding cars and other things as we go through, so I did not want anybody to be alarmed if anything like that happened, and I hope you all weren't too inconvenienced getting in given that disruption. Judge Edmondson and I are very pleased to welcome Judge Kathleen Williams here today as our visiting judge. Many of you probably know that we are a very busy court and we depend heavily on the generous service of time by some of our visiting judges. Judge Williams sits on the Southern District of Florida. She was appointed by President Obama in 2011. Before that, she served for many years as a federal public defender in Miami in the Southern District of Florida. She was quite well respected. I know this because I chaired the Criminal Law Committee of the Judicial Conference, and Judge Williams was the person selected among all the I heard that she's recently been honored with a very prestigious award in Miami, the Dave Dyer Professionalism Award, which will be awarded soon, so we are very honored and very pleased to have Judge Williams here with us today. All right, so we're ready to begin the first case, Mr. Garrett. May it please the court, my name is Colin Garrett, and I represent Paulino Morales Alonso. Sentencing Guideline 2L1.2's definition of crime of violence includes an enumerated clause and an elements clause, but Georgia aggravated assault qualifies under neither of those. I'd like to address the enumerated clause first. Of course, Application Note 1B3 does list aggravated assault as a crime of violence, but then we have to use the categorical approach to compare Georgia aggravated assault with this court's generic definition. And to qualify as a crime of violence, all conduct, including the least culpable conduct criminalized by the Georgia aggravated assault statute, must also come under this court's generic definition. In other words, the Georgia statute has to be the same or narrower than the generic definition. And you say it's not narrow in the respect that the other object definition is not really a deadly weapon. That's a main argument of yours, is that correct? Exactly. And we know that all the conduct would have to fit under the deadly weapon prong of the Georgia courts have said that aggravated assault rests on simple assault, and simple assault includes a general intent variation, the reasonable apprehension. So it can't be the case that it fits under the specific intent to cause serious bodily injury prong of the generic definition. So that definition of any other object, instrument, or device which could cause a, just happen to result in a serious bodily injury is a really broad definition. It doesn't require either a traditionally deadly weapon or serious, or I'm sorry, specific intent to cause serious bodily injury. So you're saying that it criminalizes conduct, if I understand, under the enumerated portion of the analysis, it criminalizes conduct that a brick, a pen, it could be anything, and federal law has a more circumscribed definition or jurisprudence about what a deadly weapon is? There are two important points there. The first is that the Georgia statute, it's not just that any kind of object could qualify. You're right, it could be a brick, a pen, a piece of wood, a telephone receiver, or anything, but it's also that it is kind of defined retroactively after you find out that it causes serious bodily injury, then we call that object, whatever it was, a deadly weapon because Georgia has said that that whole phrase in A2, deadly weapon or any other object, is all part of deadly weapon aggravated assault for the purposes of the Georgia definition. But it does say it has to be when used defensively against someone else likely to or actually result in serious bodily injury. But that can't, we know that can't imply any specific intent because the Georgia Supreme Court. We're not talking about intent right here, we're just talking now about whether or not it's a dangerous weapon, correct? Correct. And to answer your question, and also go back to that of Judge Williams, the Palomino-Garcia court didn't define deadly weapon, but it did draw on a lot of familiar sources like the Model Penal Code and Black's Dictionary and common law. And as I discussed in my brief, across all of those, deadly weapon is considered to be something that either is inherently dangerous or because of the manner in which it is used is likely to cause. But doesn't the pattern instructions in Georgia give you just that kind of definition, the capability instruction, where the jury is asked to look at whether it's capable of causing death or serious bodily injury considering all the circumstances? And I just happened last night going through West a little and I apologize for citing something you all haven't, but the Gibson Supreme Court case in 2008 in which a person had used a flashlight and was convicted of aggravated insult and there was some question about the instructions. And the Supreme Court said immediately after whatever the statement was made that was at issue, the court correctly instructed the jury to determine whether the deadly weapon was likely to cause serious bodily injury using evidence of actual injury as part of this inquiry. If those are the instructions that Georgia courts are endorsing and giving, isn't capability of the weapon something that juries are required to find and then that would handle your objection to the fact that it's not necessarily looking at the right element? I disagree because that was an accurate instruction because the definition in 16-521-A-2 does say likely to, but it also says or happens to cause serious bodily injury. So even though the jury may find someone guilty under the theory that this is a deadly weapon because it has some characteristics that make it, as it was used, likely to cause serious bodily injury, they may also find someone guilty under the second part of that clause which says that it did happen to, it did result in serious bodily injury. But not under the instruction I just read, they wouldn't. Well, as you said, I don't have the benefit of Gibson in front of me, but the statute is clear and cases like Stacey Kirkland also make clear that there's no intent required and it can just be the case that the defendant happened to cause serious bodily injury after the fact. And that, the so-called deadly weapon there was a car and it wasn't the case that Mr. Kirkland drove that car in a manner deliberately at the officers or toward them. The Kirkland court assumed for the purpose of deciding the appeal that in fact he had no intent whatsoever other than to the officer who had just shot him in the car. But our precedent, Palomino, when it was setting out the definition of what aggravated assault generically means, said two things. Intent to inflict serious injury or maybe actual infliction of serious injury and dangerous weapon. There was nothing along the lines of what you're suggesting about a different sort of intent. Right. So generally I'm saying that the Georgia statute, none of the conduct can be guaranteed to come under that intent prong of the generic definition of Palomino-Garcia because we know that it encompasses general intent varieties of simple and thus aggravated assault. Georgia statute does. And also because the Georgia... Wait, wait, wait. I understand that simple assault may not require a showing of intent. I do not regard it as established in Georgia law that aggravated assault does not require intent, especially if you're using something that has not been historically seen as automatically a deadly weapon. I just tell you that because I didn't want to sit here silently as you said. We all know something. I wanted you to know that there was one person in the room who does not know that. Well, I appreciate your letting me know that, Judge Edmondson. But I think that's a perfect example of a factual scenario in which a Georgia aggravated assault conviction was upheld where there isn't that kind of intent. It was explicitly upheld under the reasonable apprehension variant of simple assault underlying that. They said that by driving away and the officer's hand inadvertently getting tangled in the car and him being dragged that Kirkland had, whether he meant to or not, caused the officer reasonable apprehension of I think we would agree that a car is not one of those objects that is always a deadly weapon. And it would depend on having the intent to use it in a way that would cause serious bodily injury. I think that's the kind of intent you're suggesting you think is read into aggravated assault by the addition of an aggravator. And that's one of the arguments the government has made. But I would say that Kirkland is a perfect counterexample. But you're mixing the elements clause and the generic as I get it. When we're talking, when you're talking about the specific intent involved, the generic aggravated assault definition is going to be something somewhat different perhaps. It's not going to require the same elements as the elements clause would, correct? Otherwise, we wouldn't need a generic definition. Right. I mean, this, I think, I know from Palomino Garcia that this court when it, that it surveyed various decisions in other circuits as well as model penal code and so on to come up with a generic definition. And that required deadly weapon or intent to cause serious bodily injury. And you're right, that's different from use, threatened use or attempted use of force, of physical force. But I don't think that that, that saves the Georgia aggravated assault statute here. Let me ask you, maybe I'm conflating, understandably, maybe I'm conflating inappropriately your argument. So there's the likely to result in some bodily injury. It over-criminalizes inappropriately. And therefore, we have to go to the elements portion of our program, which gets us into the LAICAL intent discussion. Tell me if I'm correct, you're, you are saying that with the simple assault plus aggravator, which the least criminalized conduct would be reasonable apprehension plus deadly weapon. You're saying even in that scenario, because aggravated assault under Collins and Adsit and Gease does not require intent, that under LAICAL, it does not conform to the heightened intent requirement. Is that your argument? I agree with both those things. I don't think we need the linkage. I think the analysis under the enumerated clause and under the elements clause is separate. You're correct that because the least culpable conduct would be reasonable apprehension, simple assault, and then any other object which just so happens to result in serious bodily injury, just like we see in Kirkland, that because that is broader than the generic definition of Palomino-Garcia, we know that not everything that is criminalized by the Georgia statute falls under the enumerated clause. And then yes, if we would look to the elements clause, I believe you're also correct there, LAICAL plus Johnson 1 in 2010 said that the use of physical force in the context of these or here means active employment of violent force. And they specifically said there that it requires a higher degree of intent than mere negligent or accidental conduct. But they said that they weren't, they specifically said, and I think this is where the government is going to come back, we aren't looking at threatened use or attempted use. Now, it seems to me then there is a continuum, maybe not, of the heightened intent that LAICAL sets in use and then attempted and threatened use, which I think at the very least might, because of the language, suggest some kind of recklessness or disregard. Where, do you think there's a different standard on use or attempted use? Well, I mean, as you say, the LAICAL court didn't go that far. We don't know the answer from the Supreme Court to that yet. But no, I don't think so. I think that both threatened and attempted use imply the same kind of heightened mens rea. I don't think that the court is going to say that reckless or negligent conduct could satisfy either of those. So that because the aggravated assault in Georgia, according to Collins and adds it, I don't know if I'm pronouncing that correctly, says intent to injure is not an element, then that stops the analysis for you? Yes, because LAICAL said you had to have that heightened intent. And again, Kirkland's a perfect example where the court upheld the intent except to leave the scene. All right. And we will give you back your three minutes and 30 seconds since we have been asking you the questions. Thank you. Thank you. Mr. Summerfeld. Good morning. May it please the court, counsel. My name is Larry Summerfeld and it's my privilege to represent the United States. Aggravated assault is a crime of violence. It's a crime of violence under the ELEMENTS Clause and we're enumerated. I'd like to start with the ELEMENTS Clause, which is where my colleague finished, but also for the reason that the ELEMENTS Clause has broader application. We are still faced with scores of 2255 since Johnson and Welch. And the ELEMENTS Clause permeates all of them, whereas the aggravated assault is only enumerated in a couple of spots. So to be the best assistance to the district court and our litigants, I respectfully urge the court to consider deciding this on the ELEMENTS Clause, which would have the broadest application and help us the most. So Curtis Johnson tells us the quantity and type of force that's required for the use, attempted use, and threatened use of force. And that's easily met here. Bodily injury more than just a mere touching. Force capable of causing bodily injury or pain. And that's supplied by either of the simple assault elements because they speak of violent injury. So that's not an issue. What's at issue is, of course, leocal. Is there sufficient intent in the Georgia aggravated assault statute? And there is. And there is amongst all four of the possible aggravators. And I mention this, although we know that it is divisible and we the courts tell us we go to the modified categorical approach when the categorical approach won't do. When some qualify and when some won't. Let me let me ask the predicate simple assault from whence we get the aggravator. Divisible or non-divisible? Non-divisible. Okay. So for Mathis, that was less clear, right? I believe in the district court there was some you can see that it's not divisible. Yeah. Before Lockett in this circuit, I would say there was arguable. But of course, both Lockett and Mathis are applications of discaps, which is an application of Taylor. So the argument was there, but it became clear thereafter. So the first aggravator assaulting with intent to rob, murder, rape, that's a specific intent crime. Okay. If the force comes from the assault and the intent is specific intent, there's no problem. The third and fourth, no problem either. We're talking about firing a gun towards someone from a car and strangulation. So those aren't a problem. So let's get to the deadly weapon, which is at issue here. And what's the key here is that this court is bound by the ruling of the state's highest court. We know that from Curtis Johnson. It says the Georgia Supreme Court will tell us what Georgia law is. In fact, you could follow that to other cases which say we look to the intermediate state courts only where the Supreme Court hasn't spoken on an issue and only if we don't feel the Supreme Court would come out differently. And the Georgia Supreme Court answers this question. It answers it in Geis or however it's pronounced. I apologize to Mr. Geis. It says specifically that aggravated assault with a deadly weapon requires an intent to injure. Now it's clear here. It does not require a specific intent. That is a specific intent to kill or cause serious bodily injury. All it requires is a general intent to injure. And once we have the Georgia Supreme Court telling us that, we're done. Now the defense tries to take away Geis. They try to distinguish it by saying that's a first prong simple assault case. That's an intent to injure case. There's two problems with that. First of all, that's not where Justice Namius tells us that there's a general intent to injure. This is a felony murder case and they're examining the aggravated assault with a deadly weapon. And what Justice Namius says right at that first paragraph was discussing aggravated assault with a deadly weapon is aggravated assault with a deadly weapon is not a specific intent crime but it does require the general intent to injure. Then he goes to the other element of aggravated assault. First the aggravator but then he goes to simple assault. He points out that there's two varieties and he says this is both. This is both varieties. This is a driver who affirmatively turned around to do a head-on collision. He was intending an injury and it caused a reasonable apprehension of immediate violent injury in the victim. It's both and under both. I'm confused because I'm looking at Geis and it says unlike the first statutory aggravator intent to rob, rape, or murder, the second statutory aggravator does not require proof of specific intent. Aren't we aren't we talking about the that means is it doesn't require the specific intent to kill or cause serious bodily injury. Right after that Justice Namius says it only requires the general intent to injure. He didn't have to intend to kill the people. He didn't have to intend a serious bodily injury. That's part of that definition of offensive use of the car. He merely had to intend to injure to change that car into an offensive use in order to satisfy the deadly weapon aggravator. And we don't only know it from Geis because Geis cites Turner and Turner says the same thing that it requires the general intent to injure under Georgia law. And this comports with lay a call? Yes. How? Because it wasn't negligent. It wasn't a mistake. There's a general intent to injure with the car and when there's a that satisfies Leo Cal. That's the use that Leo Cal speaks of. It's not negligent. In fact, we know that from Kirkland and let's talk about Kirkland for a moment because we have to deal with Kirkland. We cited Kirkland. It wasn't in the opening brief. We felt it important the court have this information. Kirkland doesn't apply for two reasons. First and foremost, Kirkland is a Georgia Court of Appeals decision. We don't get to Kirkland because we have the Georgia Supreme Court telling us what Georgia law is. So we don't even get to the intermediate court. But second of all, there's something going on at the end of Kirkland, which is telling. Finally on appeal there, the defendant said, you know what? This isn't aggravated assault at all. This was reckless conduct. And the court says too late. You should have brought that up below. But that tells us something. If you look at the defendant's Dunnegan case, this is what separates Georgia reckless conduct from Georgia aggravated assault with a deadly weapon. Where there's intentional conduct, Leo Cal conduct, intentional conduct, it's aggravated assault with a deadly weapon. Where there's criminal negligence, it's Georgia reckless conduct, which is a misdemeanor. So that's the difference. We don't look at Kirkland because it's a state Court of Appeals decision. We have a Supreme Court decision. And we know the Supreme Court says differently. It says you require a general intent to injure. And Kirkland tells us, as does Dunnegan, that negligence that Leo Cal talks of, that's a different offense. That's reckless conduct. Now I need to take a minute to talk about the gun cases because the gun cases are a little different. I think that's what Your Honor is speaking of when you're talking about Adsit and Collins. And Georgia has a rule and it comes down from Adsit. And Adsit says that an unloaded shotgun, which is intentionally pointed at another in a threatening manner, is aggravated assault with a deadly weapon. That is nothing new. What they're saying is, as a matter of law, when you point a gun at somebody, that's a threat. That's the use, attempted use, and threatened use of force. When you point a gun at somebody in a threatening manner, that's what it says, intentionally pointing a gun at another in a threatening manner, that's a threat. That qualifies under the elements clause. Now other cases, now actually, Adsit doesn't say there's no intent to injure. But other cases, when they look at this unloaded gun scenario, throw out the language, there's no intent to injure, look at Adsit. What Adsit, if you want to say so, is saying there's no intent to injure when you have a threat, when you have the intent to threaten. That's fine. That's fine under Leo Cal for two reasons. One, as Your Honor mentioned, Leo Cal specifically takes out threats. It says we're not talking about Adsit said so. Adsit says intentionally pointing at another in a threatening manner. And so that's enough to satisfy Leo Cal as well. So we have the gun cases, where loaded or unloaded, when you threaten somebody with a gun, that's aggravated assault with a deadly weapon. And then the other cases, like the car cases... Aren't you flipping it? Because Adsit and Collins and all these cases talk about the reasonable apprehension of the victim. And that's where I'm stuck trying to find out what standard you're asking us to cobble together from the use analysis in Leo Cal, going to attempted or threatened, which we have here. The courts in Adsit and Collins and even Geist said it's the reasonable apprehension of the victim. There is no intent to injure that is necessary. You seem to be positing the fact of the weapon gives you, and I think you agree, the fact of the weapon gives you the purposeful component of our analysis. And then you cite to Silva in the Tenth Circuit, which in fact talked about threatening or menacing conduct, language that is absent from the Georgia statute. So that's what I'm trying to find out. Yes. Our position is that Leo Cal doesn't talk about threatening conduct. So it's satisfied anyway. But it satisfies it even if Leo Cal did, because Adsit tells us you're intentionally pointing the gun in a threatening manner. And that's the Georgia Supreme Court case. The other cases that are cited by the defense that you're referring to a Georgia Court of Appeals case is interpreting Adsit. And that's what Adsit requires. Can I move to the enumerated? Because I think I'll have more time on the elements in our next argument. This is also an enumerated crime. The only argument, and we need to be clear about this, the only argument made by the defense in their briefs of why this isn't an enumerated crime is the language at the end of the offensive use, which says that the object is used in such manner as is likely to or which does result in serious bodily injury or death. That which does language they suggest is an issue. Now, they go to some generic language, and there's a bunch of different versions, and they all say about the same thing. They're the same concept with some minor differences. And that's telling because we know from Taylor, and we know from Lackley, this court's case which we cite, as long as it fits the generic definition or narrower or with minor differences, we're okay. Lackley says that, and that's straight from Taylor. And all of his generic definitions, they match that. They're minor differences. And our argument is Georgia too. That's a minor difference. We know because of what the Supreme Court tells us in Gonzalez versus Duanez-Alvarez, which is cited in our brief. And I want to read two more sentences from it besides those cited in our brief. It starts, moreover, in our view to find that a state statute creates a crime outside the generic definition listed in a federal statute requires more than the application of legal imagination to a state statute's language. And here's the punchline after the language we give in our brief. Okay, first our language from our brief, it requires realistic probability, not a theoretical possibility, that the state would apply a statute to conduct beyond the generic version. And then it goes on to say, the defendant must at least point to his own case or other cases in which the state courts, in fact, did apply the statute in the special non-generic manner for which he argues. He has to point to his case or specific cases. We're all trained in law school to think of interesting hypotheticals. The Supreme Court in this instance says, don't do it, give us cases. And that the defendant does not do. The defendant gives us no cases where there's an object which is not known to be capable of causing serious bodily injury, to use the MPC definition, yet does. The only thing he gives us is a golf ball hypothetical. In his reply, two problems with a golf ball hypothetical. Well, he does cite some cases, though, that talk about weapons other than guns. They talk about fists, and the one I said, you know, flashlights. He does cite some things that aren't quite stereotypically deadly weapons. Not inherently deadly weapons, but that fits the generic definition as well. The generic definition includes, to use the MPC version, any object which in the manner in which it is used is known to be capable of causing serious bodily injury. And all of those examples that you cite or that he has cited fit that generic definition. So they fit Georgia, and they fit the generic definition. He has to give us one which doesn't fit the generic definition. In his words, it's not known to be capable of causing serious bodily injury, but it does, and it ends up in a prosecuted case. But couldn't anything, I mean, anything under that rubric could be a deadly weapon? Yes, under the generic definition, because it's not just what it is, it's the manner how you use it. It always makes me think of Agatha Christie's Dial M for Murder, when she takes the scissors and stabs them in the back. That was using those scissors as a deadly weapon because of the manner in which it was used. And that's the generic definition, and the defense doesn't doubt that. In fact, their hypothetical with the golf ball, not only is it not a real case, but it doesn't fit Georgia aggravated assault either. Why is that? Because he wasn't using the golf ball offensively. He drove the golf ball thinking he wouldn't hit the guy, but then he does. Well, that's not offensive use of a golf ball. And as we know from the other analysis, he didn't have the intent to injure. So even his hypothetical fails under the Georgia statute, and it's not a real case anyway. Showing his weakness there, he switches over to this new argument which he never made before using Kirkland, but that's really just the elements analysis in enumerated clothing, and that same analysis applies. It requires intent to injure, which is part of any generic definition. It would satisfy it. If there are no further questions on the enumerated clause, I'll just respectfully request the court affirm, and I look forward to seeing you next case. Thank you. I'll start by responding to counsel's arguments on the elements clause since we had less time to discuss that before. You know, at the very beginning, he quickly almost skipped over the Leocal and Curtis Johnson requirement about the quantum of force that it's necessary, and just said, oh, that's satisfied. I disagree with that, even before we get into the Leocal discussion of intent, because the kind of violent force that's required by a Curtis Johnson case is not evident in examples that satisfy the Georgia aggravated assault statute. So, you know, driving a car away from police, from everything, is not violent force by itself. So I disagree that that's automatically satisfied. That fact scenario is coming again from an intermediate court of appeals decision. Is that correct? That is correct, and... See, here's the thing about that. Courts decide lots and lots and lots of cases, and undoubtedly, they get some of them wrong. When the Georgia Supreme Court gets a case wrong, it's the law of Georgia. When the intermediate court of appeals in Georgia gets a case wrong, it's interesting. How are you dealing with the cases that your brother cites about, I mean, for me, you're never going to trump his arguments by citing a court of appeals case, okay? That's the shorthand clue to you. I appreciate that direction, but the Geis case that he's talking about from the Georgia Supreme Court didn't overrule Kirkland. It didn't discuss it, but it also doesn't implicitly overrule it, because the two decisions are compatible. As he admitted, the Geis facts come under the first prong of simple assault, where there was an attempt to commit a violent injury. Mr. Geis, in contrast to Mr. Kirkland, who just drove his car away with no intent, Mr. Geis deliberately rammed other cars with his car at high speeds with the intent to cause injury to the occupants therein. That doesn't come under the reasonable apprehension prong of the statute, and therefore, I don't see that as being incompatible or inconsistent with the Kirkland decision. I haven't spoken to my colleagues, and I'm going to have to think about what you folks tell me, but the emphasis on how easy it is to show simple assault never does anything for me, because we're not dealing with a simple assault case. We're dealing with an aggravated assault case, which is a different statute and has additional elements, which, to me, superficially, first reading, not making a final decision, looks like it involves something dangerous and hateful, and so the fact that one element of it is, well, you don't really have to be that hurtful and hateful, doesn't impress me that much when on down the road, there's an element that suggests that maybe for this particular crime, you do have to be, these are not technical terms, you understand, hateful and hurtful. I understand, but when we look at that form of aggravated assault that we're talking about here and under which Mr. Morales was convicted, it can include use of a deadly weapon, and we'll assume that means a traditional one, but glommed into Georgia's ever-expanding definition of deadly weapon is then this possibility that one uses any object without any intention. I thought that was generic. I mean, I really did think that was generic, too, that we don't confine the criminal law to the imagination of the perpetrator. If the perpetrator uses something that most of us would never think of a deadly weapon in a way that is likely to cause death or serious injury, and he did so in an attacking mode, I think generically that's good enough. Am I wrong? Let's talk about generic. Generically, is that wrong? It is, and there are two key things that I believe you said that narrow what you're talking about from what Georgia actually criminalizes, and that is the is likely to cause some kind of injury and attacking mode, and when you say is likely to, there is a portion, there is a way of committing Georgia A2 aggravated assault that includes using an object in a way that is likely to, and that would be the example Mr. Summerfeld gave of stabbing someone in the back with the scissors. Yes, we understand that's likely to cause that, but there's also this other opportunity, and this is the crux of why Georgia's statute is so broad and broader than the generic definition, and that is because you can also just do something without any specific intent and without any attacking mode that just happens to result. I really keep thinking that that, when used offensively, means something, and that what it means is starts triggering an intent attack or something like that. Is that, that's not right? I agree it's important to look at that. First of all, I looked in Georgia law, neither in the context of aggravated assault nor elsewhere that I could find specifically describes offensively, but we know from the decisions like Chase and Geis that Judge Williams cited that Georgia doesn't require any specific intent, so we can't say that offensively imports some kind of intent to injure into the Georgia statute because that would be if it's not to be superfluous. In some legal context, offensively means causing an offense or with something that has an offensive effect on someone. That's what I suspect it means here, and that is consistent with the A2 language that allows a conviction just for the injurious effect that this conduct, general intent conduct, ended up having on someone. So I think that reading of case law that Georgia has, but without making it superfluous. But again, the Palomino decision only talks about two things to meet the generic definition, forget the elements. It indicates that you either have to have an intent to commit injury or you have to assault with a deadly weapon, and that second prong doesn't get it all into the intent that you keep talking about. True, and the Palomino-Garcia panel didn't define deadly weapon for the purposes of that, but if we just look at a traditional deadly weapon, the model penal code, blacks, the sister states here and their statutes all require either that the object be inherently dangerous, maybe a gun, a knife, or by the way it's used in that specific application, that case is likely to cause that injury. They don't go so far as to say, like Georgia does, a deadly weapon is something that we can just look at and say after the fact, oh look, a serious bodily injury occurred, that must have been a deadly weapon. But Palomino-Garcia, as I understand it, was talking about resisting an officer, is that right? It was the Arizona aggravated assault statute, and yes, that was one of the reasons it was broader. So they didn't take up the brick or the gun or any of the things we're talking about. So if we start, which we must, with simple assault and the least culpable means of criminalizing that conduct, placing in fear, would you say that if the aggravator was with the intent to murder Rob that we wouldn't be having this discussion and all the lay call considerations would be taken care of? It's just the fact of with a deadly weapon without any other language, threatening, menacing, anything else, that the issue arises. I think that's correct. All right. Thank you. Thank you very much. Call the next case. Jeffrey Beamon versus United States.